# CHESAPEAKE & POTOMAC TELEPHONE COMPANY v. DISTRICT OF COLUMBIA.

## TAXES; ASSESSMENT; PENALTY.

1. If an assessor acts irregularly, in calling upon a telephone company for a return of its gross earnings and accepting the same as a basis of the assessment, instead of making the assessment himself as best he could, the fact does not warrant a recovery of the taxes paid in accordance therewith.

2. It is the duty of the district assessor under the express provisions of the taxing act of July 1, 1902 (32 Stat. at L. 617, chap. 1352), on accepting the delinquent sworn return of a telephone company stating the amount of its gross earnings, and adopting it as the amount of the assessment, to increase it 20 per cent and calculate the statutory tax of 4 per cent on the whole.

3. The penalty provided in the taxing act of July 1, 1902 (32 Stat. at L. 617, chap. 1352), paragraph 18, of a fine upon conviction in the police court for a violation of any of the provisions of the act, was not intended to apply to a telephone company, so as to relieve it of either the 20 per cent addition to the assessment, imposed by statute, for failure to make return of its gross earnings within a specified period, or of the 1 per cent statutory penalty imposed for each month of delinquency in the payment of the tax. (Citing *Burgdorf* v. *District of Columbia,* 7 App. D. C. 405.)

No. 2442.   Submitted December 2, 1912.   Decided February 3, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to the declaration and dismissing an action for the recovery of money paid as taxes under duress and protest.

*Affirmed.*

The facts are stated in the opinion.

*Mr. Henry B. F. Macfarland, Mr. Charles Cowles Tucker,* and *Mr. J. Miller Kenyon* for the appellant.

*Mr. Edward H. Thomas* and *Mr. Francis H. Stephens* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The Chesapeake & Potomac Telephone Company, appellant, brought this action against the District of Columbia and the collector of taxes to recover money paid as taxes, under the duress of distraint; and appeals from a final judgment sustaining a demurrer to the declaration and dismissing the action.

The pertinent facts admitted by the demurrer are that the district assessor prior to July 1, 1910, prepared the printed blanks for the assessment of personal property, and published the required notice of their readiness for taxpayers, and that they should be made out, sworn to, and returned on or before August 1, 1910. Plaintiff neglected to make out, swear to, and return its schedule, on or before August 1, 1910, showing the amount of its gross earnings for the preceding year ending June 30, 1910. January 20, 1911, plaintiff was notified in writing, with a blank inclosed, of its failure to make return of its gross earnings. January 25, 1911, it made the sworn return of its said gross earnings in amount $1,302,989.60. This was accepted as a correct statement, and no further inquiry or investigation was made of the same. After March 1, 1911, the assessors made up their final list of persons and personal property taxed, which contained an entry of the name of the plaintiff in connection with the following: "$1,563,587.52, assessed value; $62,543.50 tax." No other assessment was made or attempted to be made. The foregoing total was arrived at by adding 20 per cent to the amount returned, and the tax equals 4 per cent thereof.

May 1, 1911, plaintiff was notified to make payment during May to avoid penalty. May 29, 1911, plaintiff tendered the sum of $52,119.58, the same being 4 per cent on the amount of its return; and protested against the remainder. This was refused. After June 1, 1911, defendant rendered a tax bill for

the amount claimed and 1 per cent thereon as a penalty for nonpayment on June 1. Plaintiff refused payment and its goods were distrained. To prevent their sale plaintiff paid the amount demanded, namely, $63,168.94, and brought this action. In one count it claims $11,049.36 as the excess over the amount due by its return. In another it attacks the legality of the entire assessment and claims the amount of the same.

The determination of the questions presented on the record depends upon the construction of sec. 6 of the taxing act of July 1, 1902 (32 Stat. at L. 617, chap. 1352). That section, with its nineteen paragraphs, under the head of "Taxation of Personal Property," is a part of the general appropriation bill for the District of that year, and occupies six pages of the same. The section in its first paragraph, reorganizes the system of assessments and provides for taxation upon personal property and corporate earnings. It provides that the assessor shall prepare, annually, "a printed blank schedule of all tangible personal property and all general merchandise or stock in trade, owned or held in trust or otherwise, subject to taxation under the provisions of this section, and of the classes of corporations and companies to be assessed, together with the rate of tax prescribed, to which shall be appended an affidavit in blank, setting forth that the foregoing presents a full and true statement of all such personal property, taxable capital, or other basis of assessment, or either, as the case may be." Publication of the readiness of the blanks for delivery to taxpayers upon demand is then required to be made; and that every person, corporation, etc., shall within thirty days after final publication "fill out the proper blanks in said schedule, with a full and true statement, as in this section herein before required," which shall be sworn to. When the sworn statement shall have been made and returned, the board of tax appraisers "shall assess said property at its fair cash value" and enter the same upon the blanks and in the books for taxation for the fiscal year. If any person subject to taxation shall fail to make return, within the thirty days aforesaid, of the schedule of property as required, the board "shall without delay, from the best informa-

tion they can procure, make an assessment against such person, * * * to which they shall add 20 percentum thereof." Other administrative provisions are included which, however, are unimportant in the present case.

Succeeding paragraphs provide the specific rate of taxation upon tangible personal property; merchandise, hotel furniture; gross receipts, stock, etc., of different specified corporations. Paragraph 5 deals with national banks, trust companies, and certain public service corporations, including telephone companies. These are required to make their sworn returns on or before August 1 of each year, of the amount of their gross earnings for the preceding year ending June 30, and are required to pay the following percentages of the same: Banks and trust companies 6 per cent; gas companies 5 per cent; electric lighting and telephone companies 4 per cent; "and in addition thereto the real estate owned by each * * * telephone company * * * shall be taxed as other real estate." Paragraph 13 requires that all taxes levied under the foregoing provisions shall be collectible at the same time as the general tax on real estate, and shall be subject to the same penalties for nonpayment. This refers to sec. 1 of the preceding act of February 14, 1902 (32 Stat. at L. 33, chap. 19), which provides that when real estate taxes are not paid when due, "there shall be added to be collected with said tax a penalty of 1 per centum per month upon the amount thereof," and a like penalty each succeeding month, etc.

We perceive no special difficulty in ascertaining the general meaning of sec. 6 with its numerous paragraphs. The first and lengthy paragraph deals naturally with the machinery of assessment, leaving the different bases of assessment and the different rates provided, especially for corporations, to be regulated in special paragraphs. One of these, as we have seen, imposes a tax upon the gross earnings of certain corporations, including plaintiff, whose rate is 4 per centum thereof. And a succeeding sentence provides that taxes on real estate shall be paid by such corporation as on all other real estate. This tax upon gross earnings has been called by plaintiff a special franchise tax.

It is not so denominated in the law. The gross earnings of a corporation are personal property, and it would seem from the clause making its real estate taxable, that Congress intended the tax upon gross earnings to be in lieu of other personal property. At any rate it has been so interpreted by the assessors, who, as the declaration alleges, have made no other assessment upon the personal property of the plaintiff.

The only blank form of schedule for the taxpayers to fill out, swear to, and return is provided for in the first paragraph of sec. 6, the details of the same being left to the assessor. That this is intended for the use of each person, taxable in any mode under the succeeding paragraphs, is clearly shown by the requirement that the affidavit thereto shall present a full and true statement of all such personal property, *taxable capital, or other basis of assessment.*

The form of the schedule blank is intended to be comprehensive and adapted to the several classes of persons and the bases of assessment of each. Each person would readily perceive the one or ones intended to be filled out and sworn to by him, and would not be expected to fill out another not adapted to his case. The plaintiff, who was required only to make oath to its gross earnings, was furnished such a blank schedule and evidently understood that no other return than gross earnings was required of it. It was within the power of the assessor to prepare and submit the blank schedule to the plaintiff to be filled out, sworn to, and returned as the basis of its assessment. And it was the duty of the plaintiff to make the proper return on or before August 1. Instead of immediately making an assessment of the gross earnings of the plaintiff, a thing evidently difficult to do with any certainty, the assessor requested a return; and when the same was received adopted it as correct and added thereto 20 per cent, as he was required to do by the provisions of paragraph 1 of sec. 6. Having done this, he entered the whole amount as plaintiff's assessment and stated the tax in the amount of 4 per cent thereof. The addition of 20 per cent is not declared to be a penalty, though it savors of it; but is required to be added as a part of the assessment, and

applies to all the different classes of taxes imposed by the law. There is no reasonable ground for a construction of the statute that would make a distinction in respect of the 20 per cent addition to the assessment, or the 1 per cent penalty per month for nonpayment of the tax, between natural persons liable to a tax on personal property, and artificial persons liable to the same, though upon a different basis of assessment.

If it be granted that in calling for a return and accepting the same as a basis of the assessment, instead of making the assessment himself as best he could, the assessor acted irregularly, the fact does not warrant a recovery of the taxes paid in accordance therewith. The action is one in assumpsit to recover back money paid, and the burden is upon the plaintiff to show that the defendant *ex æquo et bono* is bound to refund the money paid. The action is founded upon what "the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay to the plaintiff." *Bailey* v. *New York C. & H. R. R. Co.* 22 Wall. 604–638, 22 L. ed. 840–849 ; 2 Cooley Taxn. 1488.

Certainly the plaintiff has no good ground to complain that its own sworn return, though made out of date, was adopted as the amount to be entered on the books as its assessment. Whether regular or irregular, it was not illegal or unjust. Having accepted the assessment, it was the duty of the assessor to increase it 20 per cent, and calculate his 4 per cent tax on the whole.

The penalty provided in paragraph 18 of fine upon conviction in the police court for a violation of any of the provisions of the act was clearly not intended to apply to plaintiff so as to relieve it of either the 20 per cent addition to the assessment, or the later 1 per cent penalty. The cases relied on by plaintiff on this point (*Erskine* v. *Milwaukee & St. P. R. Co.* 94 U. S. 619, 24 L. ed. 133 ; *Elliott* v. *East Pennsylvania R. Co.* 99 U. S. 573, 25 L. ed. 292) arose under very different statutory provision.

We are of the opinion that the 1 per cent per month penalty was rightly added to the whole amount of the tax assessed. The

amount of tax ascertained and entered as aforesaid was due and payable on a date fixed by the law. It then became delinquent, as a whole, like any other tax. Being delinquent it was the duty of the collector to add thereto, during each month of delinquency, 1 percentum upon the whole as the penalty prescribed therefor. See *Burgdorf* v. *District of Columbia*, 7 App. D. C. 405–413.

There was no error in dismissing the action, and the judgment is affirmed, with costs.                    *Affirmed.*